## MURRAY v REEB

Ohio Appeals, 2nd Dist, Franklin Co

No 2585. Decided March 23, 1936

Ray Geddes, and Knepper, White, Smith & Dempsey, Columbus, for plaintiff in error.

Hamilton, Kramer & Wiles, Columbus, for defendant in error.

## OPINION

By HORNBECK, J.

The plaintiff in error, who was the plaintiff in the trial court, prosecutes error from a judgment in favor of the defendant in error, who was the defendant in the trial court.

The action was for the wrongful death of James Austin Murray, claimed to have been caused by the negligence of the defendant in driving his Chrysler automobile eastwardly from West Mound Street onto west cross-walk of South High Street at the intersection of Mound and South High Streets, Columbus, Ohio, and striking plaintiff's decedent, resulting in his death.

On issue drawn the cause was submitted to a jury. At the conclusion of the plaintiff's case defendant moved for directed verdict, which motion was overruled. At the conclusion of the whole case the motion was renewed and the court sustained the motion, directed a verdict for the defendant and after motion for new trial was filed entered judgment on the verdict.

Three principal grounds of error are assigned and the first ground is subdivided into three headings. They are as follows:

I. In sustaining defendant's motion for a directed verdict the trial court erred:

A—In failing to interpret the evidence most favorably to the plaintiff.

B—In weighing conflicting evidence to determine the probable truth.

C—In taking upon itself the determination of ultimate facts from combinations of circumstances, upon which different minds might reasonably arrive at different conclusions.

II. The verdict of the jury, as returned at the direction of the court, is invalid and contrary to law because upon the poll of the jury by the court, on his own motion, after the verdict had been returned into court, six of the members of the jury indicated their disagreement with the verdict.

III. The verdict of the jury, as returned at the direction of the court, is invalid and contrary to law, because the direction of the verdict by the court is grounded upon erroneously admitted evidence.

We consider the second ground of error first. An affidavit of Forrest F. Smith, of counsel for plaintiff, was made a part of the bill of exceptions. The affidavit quotes from the opinion of the judge at the time that it directed the jury to return a verdict for the defendant in this language:

"Unless the court has gone far afield in his conclusion about the uncontroverted testimony, reasonable minds would not reach different conclusions."

Affiant further says that:

"After the reading of the verdict the court polled the jury to determine, as the court put it, how many of them were in agreement with the court, and asked those of the jury who did agree to raise their hands, whereupon only six of the twelve members of the jury signified their agreement with the court by raising their hands * * *."

From this affidavit it is urged that the court was in error in resolving that reasonable minds would reach different conclusions on the testimony. In our judgment this position is not well taken, because the jury did not have the law of the case by which the facts would be considered and resolved. Of course, the trial judge reviewed the factual testimony under which he reached his conclusion and failure of the majority of the members of the jury to indicate their approval of his judgment was some proof that they would have reached different conclusions. It will not do, however, to permit a jury to determine whether or not the trial court was correct in directing a verdict. No doubt every trial court and many trial lawyers have known of instances wherein the jury was very definitely in disagreement with the trial judge who had directed them to return a verdict. The action of the jury would be no controlling test in determining the legal question presented upon the motion.

The facts appearing in the case were that in the early morning of January 22, 1934, namely, about 1:00 o'clock, the defendant was driving his Chrysler automobile easterly on West Mound Street, approaching its intersection with South High Street. Riding with him was Eva Leister. They both testify that when a distance of about 125 feet from the west side of South

High Street they saw Murray step off of the north curb of West Mound Street onto the west cross-walk of South High Street and stop. The automobile proceeded eastwardly in the middle of Mound Street and into High Street where it stopped at about the center of the intersection. The defendant and Eva Leister testify that from the time they first saw Murray until they had driven into the intersection the traffic light at the center of the intersection was green for east and west traffic. These witnesses say that they did not again see Murray until after the car had been brought to a stop; that at or about the time they passed the cross-walk they felt a thud against the left rear side of the car, whereupon the defendant stopped his car in a distance of approximately 15 feet. The only direct testimony as to the speed of the car was that it was moving into the intersection at a speed of from fifteen to eighteen miles per hour.

It developed that Murray had been struck by the oncoming automobile and his body was found in a position about on the cross-walk and slightly to the north or what would have been the left side of the defendant's automobile as it passed the cross walk. It is contended by counsel for plaintiff that there is some evidence that the body of Murray was in such a position when found as to tend to prove that he was in front of defendant's car as it moved over the cross-walk.

At or about the time of the accident C. B. Moore, a constable, and Sherman Collins, a deputy sheriff, testify that they were moving northwardly on South High Street; that as they came up to the intersection of Mound and High Streets the traffic light which had been with them flashed red and against them and they stopped; that about the time they stopped they observed the automobile of defendant stop in the intersection. They investigated the accident, found the body of Murray, called a radio cruiser, then removed Murray to Mercy Hospital. These officers and Officer Holland in charge of the radio cruiser, his assistant, Officer Lewis, the defendant and Miss Leister all went to the hospital and all except Miss Leister went into the hospital with Murray. There certain emergency treatment was given Mr. Murray. He suffered most serious injuries, a broken neck, a broken leg, a two-inch wound on his head, other bruises and contusions, lingered, and later, died.

The defendant and Miss Leister say that at the time of the accident, when they went back to the place where Murray was lying Miss Leister said to him in substance that he went through a red light, to which he answered: "I know I did; I know I did." The defendant further testifies that Murray told Officer Holland at the hospital that he (Reeb) was not to be blamed and should not be held; that he (Murray) went through a red light. Officer Holland testifies that he asked Murray if he had not been drinking and he answered: "I have been drinking some;" that he also inquired of Murray if he knew how the accident happened, and that he answered: "Yes," that he walked into the side of this man's machine with the light against him. This latter statement is corroborated by Officer Lewis, and Officer Holland says that Murray talked coherently.

Constable Moore testified that Reeb inquired of Murray: "You walked into the side of my car. You went through a red light, didn't you," to which Murray answered: "Yes." But says further that Murray at the scene of the accident was unconscious and that at the hospital at the time he made the answer quoted he was just coming out of unconsciousness and that the query was answered only after persistent questioning by the defendant, which eventually resulted in his being pulled away.

Collins and Moore were questioned at considerable length concerning their movements as they approached the intersection and came to a stop, for the purpose of determining whether or not the light for east and west traffic was green for the defendant as he came into the intersection. Moore testifies at page 39 of the record:

"We were going up High Street, going north, and the light flickered there when we were back a little ways from the intersection and I slowed down and started to stop, just about that time a car came out on Mound Street and pulled up just about even with the traffic light and stopped, he had the red light (probably means green) and could have gone ahead if he had wanted to, but he didn't and I wondered what was the matter with him and I looked behind him and there was a man laying on the street."

And at page 41 this question and answer:

"Q. Now, Mr. Moore, will you tell me approximately how far south of the south curb line of Mound Street you were when

the traffic light began to flash red for north and south traffic?

A. Well, I imagine that is right around twenty or twenty-five feet where we were at, you see I was going to try to make that light there and it flickered so when I made that corner, about twenty feet from the corner, I just slowed down.

Q. Then what color was the light for north and south traffic before it stopped flickering.

A. Green.

Q. Then the flickering that you speak of began when you were twenty or twenty-five feet north, was for you to stop?

A. Was for me to stop.

Q. How long after that flickering began was it until you observed the car eastbound on Mound stop under the light?

A. The same time I pulled up there and stopped."

At page 50 on cross examination:
"Q. And it says also (referring to a plat illustrating the position of objects at the scene of the collision) that at the time the traffic light is green east and west and red north and south.

A. It says that on this paper, yes, and that is the way—

Q. Which was correct, was it not?
A. Yes."

On the subject of the traffic light Collins testified first at page 73 of the record on direct examinaton:
"Q. Let me ask you this, Mr. Collins, you may tell us whether or not as you with Mr. Moore approached the intersection of Mound and High Street, you observed the operation of the traffic light that is located there, or you saw the operation of the traffic light?
A. No, I did not, not that I remember of."

On page 80 Mr. Collins says:
"We pulled up and stopped there, there was a car setting under the traffic light."

At page 87, on cross examination, Mr. Collins said the red light was against them as they approached Mound and High when they stopped, and that the light was green for east and west traffic and that the first time he noticed the automobile of the defendant it was near the traffic light in the center of the intersection.

There was also testimony to the effect that the only mark on the automobile was a dent in the left rear fender, which appears very clearly in the photograph at the edge of the left rear fender and at a point a foot or more above the running board.

Of course, we have not undertaken to set forth evidence at great length but upon controverted questions it is in the main as we have presented.

It is the claim of the plaintiff that giving to the evidence its most favorable intendment for the plaintiff the court should not have directed a verdict for the defendant. We are cited to **Pope, Admrx. v Mudge et, 108 Oh St, 192,** wherein the first proposition of the syllabus is as follows:

"It is error for the court to direct a verdict against the plaintiff, where, by giving to the evidence the most favorable interpretation toward him which any of the evidence will reasonably warrant, there is some evidence tending to support the allegations of the petition."

No doubt the law announced in the syllabus just quoted was sound then and is sound now, although the rule controlling directed verdicts has been somewhat modified by a more recent pronouncement of the Supreme Court in the case of **Hamden Lodge, etc., v Gas Company, 127 Oh St 469.** The testimony which the trial court resolved against Pope's administratrix was determinative of the case. The action was for damages for fraud and one of the material elements to be proven was that Pope relied upon the false representations of one Mudge. In taking Pope's deposition on his sick bed, which proved to be his death bed, he was asked if he had relied upon the statements of Mudge, to which he replied "No," but upon a fair consideration of all that had been said by Van Lill to Pope and all that had been done by Pope by reason thereof and because of his serious physical and mental condition the court said there arose conflict in his testimony which might be resolved either way. We find no such conflict in the evidence in this record.

In the instant case it is contended that although Moore and Collins both say that the light for the defendant was green as he came into the intersecton it must not have been so because of the position of Moore's car as he brought it to a stop for the red light for north and south traffic; that as the light had flickered red for

Moore and Collins as they were only 20 to 25 feet from the intersection, the light must have been red for the defendant as he came onto the cross-walk. This deduction is drawn because while the traffic light for north and south traffic is for three seconds flashing red preparatory to the change to red, the light for east and west traffic remains red.

The difficulty in supporting the claim of the plaintiff that the light for east and west traffic was red against the defendant is that it is based entirely upon an inference that it took Moore less than three seconds to move from the place where he first observed the traffic light to the place where he stopped. It may or may not have been red. The positive testimony of Moore and Collins is that it was green. Of course, all the other testimony in the case is to the effect that it was green. Then, too, the plaintiff urges the theory that Murray was on the cross-walk and was entitled to a preference. But when and where Murray was on the cross-walk as the car approached him is mere conjecture except upon the testimony of defendant and Miss Leister. The position of his body after the impact offers no substantial proof as to his position when struck, whether in front of or to the left side of the car. It does, in the main corroborate the direct testimony that Murray stepped into the left side of the car as does the physical evidence.

If the claim of the plaintiff as to the light fails, then, of course, the claim of the plaintiff that Murray had the right of way on the cross-walk at the time when he was struck, fails. Then, too, the plaintiff is confronted with the uncontradicted testimony, unless it be contradicted by permissible inference, that Murray was seen to stop when he stepped off of the south curb of West Mound Street. Where, then, can the plaintiff find the factual proof that Murray was in front of the car and in the line of vision of the defendant as he approached the intersection, or that Murray was struck while in the line of movement of the defendant? If we could take it as a fact that Murray stepped onto the cross-walk from the south curb of West Mound Street and disregard the testimony that he stopped and assume that he immediately moved across the intersection, then we must indulge another inference to place him in front of the car of the defendant. There is nothing in the record inconsistent with the claim of the defendant that Murray stepped into the left rear fender of defendant's car.

We grant that there is dispute whether or not Murray was conscious when he made the admissions touching his fault at the time of the collision and the jury may have found that he did not understand what he said, either at the point of collision or at the hospital.

If, upon any nicety of consideration of this testimony in its most favorable light to the plaintiff an issue of fact could be found upon the negligence of the defendant or the contributory negligence of plaintiff's decedent, then we are satisfied to say that no verdict returned in behalf of plaintiff could be permitted to stand in this court. Such a verdict would be so manifestly against every reasonable intendment of the evidence as to shock the conscience of a reviewing court.

We have read this record with utmost care, and notwithstanding the splendid presentation of the case by counsel for the plaintiff in error, are convinced beyond any doubt that no showing was made which upon any view of the evidence could support a verdict and judgment on behalf of the plaintiff. This being true, if it could be conceived that the court erred in directing a verdict for the defendant, still it could not have been prejudicial and would not require a reversal.

Because of our determination of the principal question urged on the first claim of error it is not necessary to consider at length the third ground of error, inasmuch as we have determined this case independent of any statements or admissions made by Mr. Murray. The judgment will be affirmed upon the ground that no reversible error has intervened and that substantial justice has resulted to the plaintiff by reason of the judgment of the trial court.

BARNES, PJ, and BODEY, J, concur.